**FILED**

**NOVEMBER 1, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NF

| | |
|---|---|
| RONALD E. POWELL, KENNETH R. BOYD, <br> D. TROY PRUITT, BRIAN JORDAN, <br> JAMES V. MORGAN and JOHN DOUGHERTY, as <br> Trustees on behalf of UNITED FOOD AND <br> COMMERCIAL WORKERS UNIONS AND <br> EMPLOYERS MIDWEST PENSION FUND, <br><br>                     **Plaintiffs,** <br><br>    v. <br><br> GILMAN NURSING PAVILION, LLC, <br><br>                     **Defendant.** | Case No. <br><br> **07 C 6181** <br><br> **JUDGE MANNING** <br> **MAGISTRATE JUDGE MASON** |

**COMPLAINT**

NOW COME Plaintiffs, RONALD E. POWELL, KENNETH R. BOYD, D. TROY

PRUITT, BRIAN JORDAN, JAMES V. MORGAN and JOHN DOUGHERTY, as Trustees on

behalf of UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS

MIDWEST PENSION FUND, (hereinafter, "MIDWEST PENSION FUND"), by and through their

attorneys, THE KARMEL LAW FIRM, and for their cause of action against Defendant, GILMAN

NURSING PAVILION, LLC (hereinafter, GILMAN), allege as follows:

**JURISDICTION AND VENUE**

1.     This action is brought by Plaintiffs, as Trustees of the MIDWEST PENSION FUND,

for the purpose of securing payment of pension benefits contributions from GILMAN, pursuant to

the terms of a Collective Bargaining Agreement ("CBA").  The CBA for the term July 1, 2005

through July 1, 2008 was entered into between GILMAN, as Employer, and UNITED FOOD AND

COMMERCIAL WORKERS UNION, LOCAL NO. 1546, chartered by UNITED FOOD AND

COMMERCIAL WORKERS INTERNATIONAL UNION, AFL-CIO, CLC (hereinafter, "Local 1546").  A copy of the CBA is attached hereto as Exhibit "A".

2.    This action is governed by the Employee Retirement Income Security Act of 1974 as amended (hereinafter, "ERISA"), 29 U.S.C. §1001 et seq., particularly sections 502 and 515 of ERISA, 29 U.S.C.§§1132 and 1145, and Section 301(a) of the Labor Management Relations Act (hereinafter, "LMRA"), 29 U.S.C. §185(a).

3.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(f) and 29 U.S.C. § 185, as well as general federal question jurisdiction pursuant to 28 U.S.C. §1331.

4.    Venue is established within the geographic jurisdiction of this Court pursuant to Section 502(e) of ERISA, 29 U.S.C. §1132(e)(2), as this is the district in which the MIDWEST PENSION FUND is administered.

## THE PARTIES

5.    Plaintiffs herein are Trustees of the MIDWEST PENSION FUND, which is established and operates pursuant to an Agreement and  Declaration of Trust (hereinafter, "Trust Agreement") for the purpose of providing pension benefits for employees.   A copy of the Trust Agreement is attached hereto as Exhibit "B."  The  MIDWEST PENSION FUND is a multi-employer benefits fund within the meaning of ERISA, 29 U.S.C. §1001 et seq.  The MIDWEST PENSION FUND has its principal office at 1300 West Higgins Road, Park Ridge, Illinois, and is administered from that location.

**GILMAN NURSING PAVILION Complaint**

6.    At all times material hereto, Defendant, GILMAN, engaged in interstate commerce or in an industry or activity affecting commerce within the meaning of ERISA, 29 U.S.C. §1002(11) and (12).  At all times material hereto, GILMAN operated a nursing home in Gilman, Illinois. GILMAN's principal office is located at 3359 West Main Street, Skokie, Illinois 60076.

## COUNT I

### (Action to Collect Unpaid Contributions and Liquidated Damages)

7.    Plaintiffs repeat, reallege and incorporate herein by reference Paragraphs 1 through 6 of the Complaint.

8.    Pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(g), the CBA, and the Trust Agreement, Plaintiffs are empowered to take all necessary action to recover all contributions due, together with interest, liquidated damages, reasonable attorneys' fees, and court costs.

9.    Article V of the Trust Agreement requires the payment of liquidated damages by GILMAN to the Fund for each month a delinquency exists.  Such liquidated damages have been established at 10% of the amount of contributions due for the first month of the delinquency and, in addition thereto, 1½% for each additional month such delinquency remains outstanding.  Said article also provides that the Employer shall be liable for the cost of filing suit and reasonable attorneys' fees.

10.    MIDWEST PENSION FUND is a third-party beneficiary to the CBA because it is designated by the CBA to receive contributions to be used to provide pension benefits for employees covered by the CBA.

11.    Plaintiffs have performed all the conditions required to be performed pursuant to the terms of said Agreements.

**GILMAN NURSING PAVILION Complaint**

12.     As of the present, GILMAN has failed to make pension contributions to the MIDWEST PENSION FUND for the months of November 2006 through September 2007 and is therefore delinquent and in breach of the CBA in the amount of, at least, $13,288.96, plus liquidated damages and interest.

13.     In view of the foregoing, GILMAN owes the MIDWEST PENSION FUND contributions in the amount of, at least, $13,288.96 for the above-mentioned months, which have not yet been paid, as well as liquidated damages,  interest, and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court grant relief, as follows:

a.     Enter an Order requiring Defendant, GILMAN, to account to Plaintiffs for all sums due under the provisions of the CBA and the Trust Agreement.

b.     Enter an Order requiring Defendant, GILMAN, to specifically perform under the terms of the CBA and the Fund's Trust Agreement, and to pay to Plaintiffs unpaid principal.

c.     Enter an Order requiring Defendant, GILMAN, to pay to Plaintiffs liquidated damages on all delinquent contributions, together with Plaintiffs' attorneys' fees and costs.

d.     Enter an Order requiring Defendant, GILMAN, to pay to Plaintiffs an amount equal to the interest on the unpaid contributions at the rate prescribed under Section 6621 of the Internal Revenue Code of 1985; and

**GILMAN NURSING PAVILION Complaint**

e.    For such other relief as this Court deems just and equitable.

Respectfully submitted,

Mindy Kallus
One of the Attorneys for Plaintiffs, Ronald Powell,
Kenneth R. Boyd, D. Troy Pruitt, Brian Jordan,
James V. Morgan and John Dougherty, as Trustees on
behalf of United Food and Commercial Workers
Unions and Employers Midwest Pension Fund

Jonathan D. Karmel
Mindy Kallus
THE KARMEL LAW FIRM
221 North LaSalle Street - Suite 1414
Chicago, IL 60601
(312) 641-2910

-5-                    **GILMAN NURSING PAVILION Complaint**



*04.00. 000; 0554. 3*

*7.1.2005 THRU 7/1/08*

**COPY**

*5000347*

**AGREEMENT**

**RECEIVED**
FEB 2 3 2006
**ADMINISTRATOR**
**UFCW MIDWEST BENIFITS**

Between

# UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL 1546

And

# THE GILMAN NURSING PAVILION, LLC

## July 1, 2005 through July 1, 2008



**EXHIBIT**

*A*

BILLING DEPT.

FEB 2 3 2006

JANICE

# AGREEMENT

THIS AGREEMENT is entered into between UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1546 (herein called the "Union") and THE GILMAN NURSING PAVILION, LLC (herein called the "Employer").

## ARTICLE 1 - PURPOSE

1.1     The purpose of this Agreement is to establish and maintain harmony and cooperation between the Nursing Center and the employees covered hereunder, by setting forth the complete understanding between the Employer and the Union with respect to wages, hours and other terms and conditions of employment of such employees and providing an orderly procedure for the prompt and fair disposition of any grievances or problems that might arise.

1.2     Both the Employer and the Union, in entering into this Collective Bargaining Agreement, agree to jointly work together in providing and maintaining conditions that will permit employees to perform their work in a safe, efficient, energy-conscious manner.  It is essential that both parties be committed to carrying out the complete terms of this Agreement for the benefit of the employees, residents and the community in general.

## ARTICLE 2 - RECOGNITION

2.1     The Employer recognizes the Union as the exclusive bargaining agent with respect to wages, hours and other terms and conditions of employment for all full-time and part-time nurses aides, orderlies, housekeeping employees, laundry employees, dietary employees, rehabilitation aides, and activities aides employed by Gilman Nursing Pavilion, excluding registered nurses, licensed practical nurses, all office and clerical, department heads, guards and supervisors as defined in the Act.

2.2     Unless the context clearly indicates otherwise, the term "employee" as used in this Agreement means only a person employed by the Nursing Home in the bargaining unit as described in Section 2.1.

2.3     A regular full-time employee is an employee who is regularly scheduled to work sixty (60) or more hours per two (2) week pay period.

2.4    A regular part-time employee is an employee who is regularly scheduled to work less than sixty (60) hours but more than forty (40) hours per two (2) week pay period.

## ARTICLE 3 - UNION AFFILIATION

3.1    The Employer agrees that there shall be no discrimination against any employee because of Union membership or lawful Union activity.

3.2    It is agreed that an employee of the Employer, upon being elected or appointed to office in the Union, shall be granted a leave of absence for the period up to three (3) months, and upon expiration of such leave shall be reinstated to the first available position.

## ARTICLE 4 - UNION SECURITY

4.1    The following employment condition shall be effective:  It shall be a condition of employment that all employees of the Nursing Home covered by this Agreement who are members of the Union in good standing on the execution date of this Agreement, shall remain members in good standing and those who are not members on the execution date of this Agreement, shall on the thirty-first (31st) day following the execution date of this Agreement, become and remain members in good standing in the Union as provided for in Section 8(a) (3) of the Act. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution date shall, on the thirty-first (31st) day following the beginning of such employment, become and remain members in good standing in the Union. The Employer may secure new employees from any source whatsoever.

New employees shall be on a sixty (60) day probationary trial period and may be discharged during the probationary period at the discretion of the Employer.  There may be an extension of this probationary period for up to thirty (30) days upon mutual agreement between the Employer, employee and the Union.  Upon completion of the probationary time, his/her seniority shall revert back to the beginning date of his/her employment.  There may be an extension of the sixty (60) day probationary period for another sixty (60) days to enable the employee to qualify and complete all the educational requirements as required by the facility and the Nursing Home Reform Act.  Upon completion of this probationary period, seniority shall revert back to the date of hire.

2

4.2     The Employer shall pay said person so employed during the period said person is not a member of the Union at the regular Union wage provided for in this Agreement and shall in all other respects require said person to work under and live up to all provisions of this Agreement.

4.3(a)  **Check-Off**:  The following provision shall become effective for Professional and Health Care Employees Division of United Food and Commercial Workers Union, Local 1546, if and when such Local Union desires to institute such checkoff procedure.  Upon thirty (30) days' notice to the Employer involved, the following shall become applicable:

> "The Employer shall for the term of this Agreement deduct initiation fees as authorized, and shall deduct Union dues from the first full pay of each month of employees who are members of the Union who individually certify, in writing, authorization for such deductions.  The authorization for such deduction may be revoked by the employee upon giving thirty (30) days' written notice to the Employer and the Union.  The Employer shall promptly remit all sums deducted in this manner to the President of the Local Union."

4.3(b)  The Employer agrees that is will make authorized payroll deductions to the Employees Credit Union, sponsored by the United Food and Commercial Workers Union Local 1546.

4.3(c)  **Active Ballot Club (A.B.C.)**: The Employer agrees to honor and transmit to the Union, contribution deductions to the United Food & Commercial Workers International Union Active Ballot Club from employees who are union members and who sign deduction authorization cards.  The deductions shall be in the amounts and with the frequency specified on the political contribution authorization cards; however, such deductions shall be remitted in conjunction with regular monthly dues deductions. While the deductions will be remitted at the same time of the regular monthly dues deductions, such payment shall be in the form of a separate check from the regular monthly dues deductions.  When the Employer remits the deduction to the United Food & Commercial Workers International Union Active Ballot Club the Employer shall include a list of individuals for whom the deductions were made.

3

4.4    Authorized Union representatives shall be allowed reasonable access to all bargaining unit work areas upon notice to the Administrator to insure that the terms and conditions of this Agreement are being complied with. Such permission shall not be unreasonably withheld.

4.5    The Employer shall make known to each applicant for employment the existence of the contractual relationship provided by this Agreement. The Employer shall make available to each employee a copy of the written job description applicable to the position occupied by the employee, which the employee shall sign. The Employer shall furnish the following information by the first (1st) of each month:

(a)    Any change in the regular rate of pay for any employee.

(b)    Any change in the job classification of any employee.

## ARTICLE 5 - MAINTENANCE OF STANDARDS

5.1    No employee shall, as a result of this Agreement, suffer any reduction in wages previously granted by the Employer. Further, this Agreement provides minimum standards only and shall not prevent this Employer from granting additional payment of benefits so long as such granting is not otherwise violative of this Agreement or state or federal laws.

## ARTICLE 6 - MANAGEMENT RIGHTS

6.1    Management of the Nursing Home, the control of the premises and the direction of the working force, are vested exclusively in the Employer, subject to the provisions of this Agreement. The right to manage includes, but is not limited to the following: the right to discipline, suspend, lay off or discharge for any violation of the facility's policies or work and safety rules, and supervise employees, to determine starting times and shifts, procedures, and equipment to be utilized by employees; to achieve the highest level of employee performance and production consistent with safety and good health.

## ARTICLE 7 - HOURS OF WORK AND OVERTIME

7.1    The provisions of this Article are intended to provide the basis for calculating overtime and shall not be construed as a guarantee of hours of work per day or days of work per week, or

4

pay in lieu thereof, except as expressly provided for in Section 7.11 and 7.12. The basic workweek shall be Monday through Sunday.

7.2    Time and one-half (1½) of the regular straight-time hourly rate will be paid for all hours worked: (a) in excess of eight (8) hours in any working day; (b) in excess of forty (40) hours worked in any one (1) week payroll period, Monday through Sunday; and (c) upon completing their scheduled first shift, full-time employees, as defined in Section 2.3, will be paid time and one-half (1½) for any additional time worked.

7.3    Overtime must be approved by the supervisor prior to working overtime. Employees desiring to work overtime shall indicate this desire and their availability, in writing, to the Employer. When overtime hours become available, the Employer shall offer those hours to the most senior employee who has indicated first. When it is necessary for the Employer to assign overtime, those hours shall be assigned to the least senior employee first. Further available hours will be offered to current employees before the Employer resorts to outside-agency staffing.

7.4    There shall be no pyramiding or duplicating of overtime rates. Hours compensated for at overtime rates under one provision of this Agreement shall be excluded as hours worked in computing overtime under any other provision.

7.5    Holidays paid for but not worked by an employee shall not be counted as time worked for the purpose of computing overtime.

7.6    Employees working a shift of more than four (4) hours will normally be allowed a thirty (30) minute uninterrupted meal period without pay, except in emergencies. No meal period will be provided for employees working a shift of four (4) hours or less.

7.7    Employees working a shift of seven and one-half (7½) hours or more will be granted an uninterrupted rest period or periods, except for emergencies, totaling thirty (30) minutes. The rest periods will be scheduled to provide fifteen (15) minutes of rest before the meal period and fifteen (15) minutes of rest after the meal period. Employees working a shift of three and one-half (3½) hours but less than seven and one-half (7½) hours will be granted a

rest period of fifteen (15) minutes. Employees assigned to work overtime for a continuous period of four (4) hours or more after the end of their regular shift will be granted an additional rest period of fifteen (15) minutes during the overtime period.

7.8     Work schedules shall be posted at least five (5) days prior to the start of the work period. If the Employer makes a change in the work schedule of any individual employee, two (2) days' notice of the change in the work schedule of the individual employee shall be given by the Employer to the employee, except in emergencies or to provide for absent employees.

7.9     Schedules shall provide employees with twelve (12) hours' rest between shifts, except in emergencies or to provide coverage for absent employees.

7.10    Full-time employees shall not be scheduled to work for more than six (6) consecutive days in the same workweek, unless overtime pay is paid for work in excess of six (6) consecutive days, unless the employee requests such schedule.

7.11    An employee reporting to work at his/her regularly scheduled starting time who has not previously been notified not to report for work shall receive a minimum of four (4) hours of work for that day or in lieu thereof, four (4) hours' pay.

7.12    Employees who are called in to work outside their regularly scheduled work shifts shall receive a minimum of four (4) hours' pay or pay for hours actually worked, whichever is greater.

## ARTICLE 8 - RATES OF PAY

8.1     Job classifications in existence on the date of this Agreement, the rates of pay and progression schedules applicable thereto and the effective dates of said rates are set forth in Exhibit A, attached hereto and made a part hereof.

8.2     If during the term of the Agreement, new job classifications are established within the bargaining unit, or the duties of an existing job classification are substantially changed, the Employer will put the new or changed job classification into effect and establish a rate of pay

6

therefore.  Such rate will be negotiated with the Union in advance.  A grievance protesting the rate may be filed under the grievance procedure in Article 12, provided that the sole grounds for any such grievance should be that the rate does not bear a proper relationship to existing rates.

8.3     Employees shall be paid semimonthly and shall receive therewith a statement showing the number of hours worked, the amount of deductions and for what purpose.  Each employee's time card shall be available upon request.

8.4     Payroll shortages on employees' paychecks will be paid within three (3) days if the amount is greater than $50 00.  If the amount is less than $50.00, it will be paid on the following paycheck.

## ARTICLE 9 - SENIORITY

9.1     Seniority shall be defined as a length of continuous employment with the Employer.  Under this definition, the last employee hired shall be the first to be laid off.  Temporary absence from work, as set forth in this Agreement, shall not break seniority.  Seniority may be broken only by:

(a)     quitting;

(b)     justifiable discharge;

(c)     if an employee has been continuously laid off for a period of more than six (6) months;

(d)     failure by the employee to notify the Employer within two (2) days of recall that he/she wil l return to work;

(e)     failure of an employee to return to work after recall from layoff within two (2) days from date of notification of recall;

(f)     failure of an employee to return to work in accordance with the terms of leave of absence;

(g)     if the employee is absent from work for one (1) days without advising the Employer; or

(h)     if the employee gives a false reason for obtaining a leave of absence, or engages in other employment during such leave.

Recall to work shall be governed by the same principles of seniority.

9.2     Part-time employees shall be given preferences to full-time employment over new hires. Full-time and part-time employees by seniority within their department, may claim the greater number of available hours if such employee is available and qualified to work such hours.

9.3     Upon the Union's request, the Employer shall semiannually furnish the Union with a current seniority list covering all names, rates of pay, dates of hire and classification of each employee.

9.4     When an employee is promoted or transferred from a bargaining unit job to a position outside the unit, his/her seniority status shall be frozen as of the date of promotion or transfer. If he/she is transferred back to the bargaining unit, he/she shall be entitled to a job in accordance with such accumulated seniority and ability as if he/she had been laid off. An employee who is employed by the Nursing Home originally in a supervisory position outside the bargaining unit shall not accumulate seniority while working as a supervisor.

## ARTICLE 10 - HOLIDAYS

10.1     The following days shall be recognized as holidays for all eligible employees under this Agreement: New Year's Eve or New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day or the Friday after, Christmas Eve or Christmas Day and the employee's anniversary date. In addition thereto, after six (6) months of employment, the employee shall be eligible for one (1) Personal Day per calendar year, and the employee's birthday shall be recognized as a holiday. Employees with one (1) year or more of service shall be entitled to one (1) additional Personal Day for a total of two (2). Employees with four (4) years or more of service shall be entitled to one (1) additional personal day for a total of three (3).

10.2     To be eligible for holiday pay an employee must satisfy all of the following requirements:

      (a)     he/she must have worked his/her scheduled workday before and his/her scheduled workday following the holiday unless excused by the Employer for good cause; and

      (b)     he/she must have worked in the semi-monthly payroll period in which the holiday falls unless on vacation or sick leave.

10.3    Because the Employer operates every day of the year, twenty-four (24) hours a day, and that it is not possible for all employees to be off duty on the same day, the Employer has the right, at its sole discretion, to require any employee to work on any holiday listed above in accordance with their regular posted schedule.

10.4    If a holiday falls within an employee's scheduled vacation, the employee, if otherwise eligible, shall be paid holiday pay in addition to his/her vacation pay, or granted an additional day of paid vacation.

10.5    Hours worked on holidays will be paid at the regular rate of pay in addition to the holiday pay. All employees shall receive holiday pay based upon the proportion that their hours worked per week bear to forty (40) hours measured over the eight (8) week period immediately preceding the holiday.

10.6    An eligible employee who is laid off on the day immediately preceding or on the day immediately following a recognized holiday shall receive holiday pay for the recognized holiday.

10.7    The employee's Personal Day, a paid holiday under this Agreement, may be granted thirty (30) days before, but no later than thirty (30) days after, the actual date and shall be paid if not taken, should the employee be terminated or voluntarily quits after said holiday.  Each employee shall request his/her Personal Day in writing, with two (2) weeks' notice to their Department Head.

10.8    During the first sixty (60) days of an employee's probationary period, said employee shall accrue no holidays.

10.9    Holidays shall be observed on the federal day of observance.

## ARTICLE 11 - VACATIONS

11.1   All employees shall be granted vacations with pay based upon their years of continuous service with the Nursing Home in accordance with the following schedule:

- One (1) week per year after one (1) year of service

- Two (2) weeks per year after two (2) years of service

- Three (3) weeks per year after five (5) years of service

- Four (4) weeks per year after ten (10) years of service

- Five (5) weeks per year after fifteen (15) years of service

11.2   All employees shall receive for each week of vacation, pay equal to the average number of hours worked per week, measured over the preceding fifty-two (52) weeks. Vacation pay will be computed based upon the rate received by the employee as of the time the vacation is taken.

11.3   An employee's vacation eligibility year is the twelve (12) month period immediately preceding the anniversary of his/her last date of hire and is the period in which he/she earns his/her vacation.

11.4   Employees must take their vacation during the twelve (12) month period following their vacation eligibility year. Employees who have worked at least six (6) months past their anniversary date and resign and give two (2) weeks' notice of termination of employment will be entitled to receive vacation pay in lieu of vacation to the extent that such vacation pay has been earned on the date of termination of employment. An employee discharged shall not receive any benefits under this Contract.

11.5   An employee will receive vacation pay on the last established payday prior to the start of the vacation. Vacations earned must be taken; no vacation pay will be given in lieu of vacation, unless agreed to by the Employer and the employee. Employees shall request their vacation thirty (30) days prior to the end of their vacation eligibility year in writing to their supervisor. Employees shall not work for the Nursing Home during vacation, except in emergencies. No employee shall lose vacation pay if not allowed to take vacation time.

11.6    Employees shall be given preference in the choice of vacation dates on the basis of seniority. The Employer will make a good-faith effort to advise employees of the available dates prior to their anniversary date of employment each year so that employees will be better able to express their preference for vacation periods. No vacation time will be allowed during the month of December, unless mutually agreed upon.

Extra days of vacation must be mutually agreed upon in order to be added to the week or weeks of vacation. No one shall be scheduled to work any weekends during his or her vacation.

11.7    All employees must give a two (2) week notice of termination to receive pro rata benefits under this Agreement.

11.8    A week's vacation shall be nine (9) days off of work if requested by the employee (the weekend prior, plus one (1) week off, and the weekend after). No employee shall be requested to make up a lost weekend because of vacation.

11.9    Vacation schedules shall be posted no later than February 1, for the employees to post vacations for the following year.

The schedule shall include the employee's name and number of weeks of vacation the employee is eligible for.

## ARTICLE 12 - GRIEVANCE PROCEDURE

12.1    Subject to the provisions of Section 12.2, any grievance by the Union or an employee against the Nursing Home with respect to the interpretation or application of, or compliance with, this Agreement or with respect to disciplinary action taken with any employee, including the reasonableness of any Employer rules of conduct or regulations under which the disciplinary action may have been taken, shall be settled in the following manner:

1.    The Union representative involved shall orally discuss the grievance with the Administrator. The Administrator shall reply orally to the grievance.

11

2.    If the matter is not satisfactorily adjusted in step (1) the grievance shall be reduced to writing and submitted to the Administrator of the facility. The written grievance shall contain a brief statement of the nature of the grievance and shall state the relief sought. The Administrator or his/her designee shall reply to the grievance within ten (10) days.

12.2    When in the judgment of either party arbitration is necessary, either party may initiate same by notifying the other party in writing that it has invoked the arbitration provisions of the Contract and that it has requested the American Arbitration Association to submit a panel of arbitrators to the parties. In no event shall arbitration be initiated earlier than seven (7) days following the mailing of the written grievance. The parties shall promptly proceed to select an arbitrator from the panel and proceed to arbitrate the grievance all in accordance with the rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding on the parties.

12.3    Expenses incurred in connection with the arbitration, to wit, fees of the American Arbitration Association, the arbitrator's fees and expenses and rental of a hearing room, if necessary, shall be shared equally by the parties.

12.4    All grievances except those hereinafter specified must be presented in the first step of the grievance procedure within ten (10) days, except for wage claims which shall be presented within a reasonable time, from the date the cause for the grievance occurs or the employee or the Union has knowledge of the cause for the grievance.

Grievances involving the discharge, suspension, or layoff of an employee, must be presented within ten (10) business days subsequent to the date of the discharge, suspension or layoff. Unless grievances are so presented, the right to file a grievance shall be waived.

## ARTICLE 13 - NO STRIKE - NO LOCKOUT

13.1    The Union will not cause or permit its members to cause, and will not sanction in any way, any strike, slowdown, picketing, or other curtailment, restriction, or interference with any

12

Employer functions or operations for any reason whatsoever, and no employee will participate in any such activities during the term of this Agreement or any extension thereof.

13.2 The Employer agrees that it will not lock out its employees during the term of this Agreement or any extension thereof.

### ARTICLE 14 - ABSENCE FROM WORK

14.1 All employees may be granted a leave of absence without pay for a period not to exceed ninety (90) days, provided a written application is submitted to the Employer setting forth a good cause for the leave of absence and such leave does not interfere with the efficient operation of the department and, provided further, that the leave may be extended by the Employer at the request of the employee for an additional period or periods of ninety (90) days.

Normally, a leave of absence will not be granted during the first (1st) year of employment except for a short duration in emergency circumstances.

14.2 Military leaves of absence and the reemployment rights of employees who serve in the armed forces of the United States will be determined on the basis of the applicable federal law of the land.

14.3 All employees who apply will be granted a maternity leave of absence without pay. It is the responsibility of the employee to inform her supervisor and the Administrator, in writing, of her pregnancy as soon as she becomes aware of it, and a letter must be submitted from her doctor stating the anticipated date of birth and a determination of how long the pregnant employee may physically continue to work. An employee desiring to return to work after a maternity leave must notify the Employer in writing in advance of the date she desires to return to work and must submit a letter from her physician stating that she is physically able to return to normal, unrestricted duties.

14.4 **Injury and Illness Leave**: A leave of absence of up to six (6) months shall be granted to employees unable to work because of injury or illness. Upon return to work from a leave of

absence, the employee shall be reinstated to the job previously held, or to a comparable job. The employee shall be restored to the work schedule for the next work period following notice to the supervisor of his/her availability.

14.5    **Jury Duty**: Employees must immediately notify the Employer that they are called upon to serve on jury duty. The Employer may ask for the employee to be excused from jury duty. An employee who is called upon to serve on jury duty shall be paid for actual hours worked for the Employer    If this pay, together with his/her jury-duty pay does not equal his/her regular weekly pay, the Employer will make up the difference for a maximum period of two (2) weeks, provided the employee works such hours as he/she is available during the hours when court is not in session.  An employee receiving full-time pay from his/her Employer while serving on a jury will be required to turn in to his/her Employer the jury pay for the period he/she served on the jury, not to exceed two (2) weeks.

14.6    Employees required to appear in court or in legal proceedings on behalf of their Employer shall receive compensation at their regular straight-time hourly rate of pay for the time spent in making such appearances, less any witness fees received.

## ARTICLE 15 - ADDITIONAL BENEFITS

15.1    **Sick Leave**: Regular full-time employees, with less than five (5) years of employment, shall accrue sick leave with pay at the rate of one-third (1/3) of a day for each calendar month worked in each calendar year.  An employee hired on or before the fifteenth (15th) of the month shall accrue sick leave for that month.  An employee hired after the fifteenth (15th) of the month shall not accrue sick leave in that month.  Sick leave accumulation shall begin from the first (1st) day of employment.  Eligibility for paid sick leave will not begin until after completing two (2) months of employment.

Regular full-time employees with five (5) years or more of service shall accrue sick leave with pay at the rate of one-half (½) of a day for each calendar month worked in each calendar year.

14

15.2(a) All unused sick days shall accumulate from year to year up to a maximum of twenty-six (26) days for future use. Upon termination with two week's notice, any unused sick days shall be paid to employees.

Sick pay will start on the second (2nd) day unless there is a doctor's note.

15.2(b) Employees who accrue more than twenty (20) days sick pay shall be able to convert sick days to personal days as follows:

- Employees with more than ten (10) years seniority can convert up to two (2) sick days per year to personal holidays.

- Employees with less than ten (10) years seniority can convert up to four (4) sick days per year to two (2) personal holidays (employee trade two (2) sick days for one (1) personal day.

15.3   **Funeral Leave**: Employees shall be allowed paid time off at their regular rate of pay up to, but not to exceed three (3) working days as normally scheduled for the employee in case of death of the employee's parent, spouse, child, brother, sister, grandparents, stepchildren, and foster children. Employees shall be allowed one (1) day off at regular rate of pay for the death of the employee's present in-laws. The Employer may request proof of death or attendance at the funeral and proof of residency.

15.4   Moreover, if the employee is notified of such death at work, he/she shall be excused from further work on that day without loss of pay and the time off provided for above shall begin with the following day.

15.5   **Uniform Allowance**: The Employer agrees to provide uniforms for all employees who are required to wear them. Beginning July 1, 1999, each employee following their respective anniversary date will receive one (1) uniform top every six (6) months. The employee shall be responsible for the cleaning and care of the uniform.

15

**ARTICLE 16 - GENERAL PROVISIONS**

16.1   The Employer and the Union agree that neither the Employer nor the Union shall discriminate with respect to employment or personnel action by reason of Union Affiliation, race, color, creed, sex, national origin, or age as provided by law.

16.2   The Employer will continue to make reasonable provisions for the safety of its employees during their hours of employment. Employees from the bargaining unit may be asked by the Employer to serve on the Employer's safety committee without loss of wages. Each employee must wear the color and the type of uniform required by his/her department.

16.3   The employee agrees to uphold the rules and regulations of the Employer in regard to punctual and steady attendance, proper and sufficient notification in case of necessary absence, conduct on the job, and all other reasonable rules and regulations established.

16.4   The Employer and the Union agree to cooperate in maintaining and improving safe working conditions and practices, in improving the cleanliness and good housekeeping of the establishments, and in caring for the residents or patients in the best manner possible in conformation with all rules and regulations of the Illinois Department of Public Health.

16.5   Voluntary organizations and workers perform services for the Employer that are valuable and necessary contributions to the welfare of the residents and to the operation of the facility. Also, the Employer engages in education and research which involves persons performing tasks and being sought to perform tasks which are similar or identical to those of employees of the facility. The Employer continues to have the right to avail itself of any and all such voluntary services and to engage in such educational and research activities. Volunteers and persons engaged in educational and research activities shall not be used for the purpose of displacing regular employees.

16.6   Employees making a written request at least one (1) day in advance of a national, state or local election, will be granted two (2) hours off without pay for the purpose of voting.

16

16.7    **Time Off for Union Business:** The Employer agrees to grant necessary time off without pay and without discrimination to any employee designated by the Union to attend a labor convention or to serve in any capacity on other official Union business so long as it does not interfere with the Employer's business and provided that written notice is given to the Employer by such employee at least one (1) week prior to the start of the affected shift.

16.8    The parties agree that this Contract may be amended by mutual agreement of both parties, and, if amended, the amendment shall be attached to the Contract by addendum and signed by both parties.

16.9    The Employer will provide sufficient space on a bulletin board for the posting of Union notices.

16.10    The Employer will not require employees covered by this Agreement to submit to lie detector tests unless prevailing conditions in the facility would be injurious to the health and safety of the residents and/or employees.

16.11    Employees may be required to take a physical examination at the Employer's expense, up to $20.00, to show their physical fitness to perform the work for which they have been employed. The results of the physical examinations must be submitted to the Employer within ten (10) days of date of hire or anniversary date.

16.12    Employees required to attend meetings or in-service classes shall be paid for time spent at these meetings or classes at the applicable rate of pay.

16.13    The Employer agrees not to enter into any Agreement or Contract with his/her employees individually or collectively, which in any way conflicts with the terms and provision of this Agreement.

16.14    All employees must return to work following an injury and be certified as ready and able to perform all regular duties. If the employee requires medical treatment as a result of the injury, the Employer shall adjust the work schedule, without penalty to the employee, to provide both the time for medical care and the number of hours of work for which the employee is regularly scheduled to work.

16.15   Employees shall not be monetarily responsible for damages or repairs for equipment which result from the ordinary use of any of the Center's equipment.

16.16   Labor-Management meetings shall be set at the discretion of the Union and the Employer.

16.17   The Union shall have the right to appoint stewards.

## ARTICLE 17 - DISCHARGE AND SUSPENSION

17.1    Employees will be suspended or discharged in accordance with any violation of the facility's policies or work and safety rules.

17.2    The Employer shall notify the Union of any discharge or suspensions, stating the date of discharge or suspension, and the reason, no later than the Union's seventh (7th) regular business day.

17.3    The Employer will utilize written warning notices along with individual counseling sessions. Copies of the written notices will be available to the Union.

        A written warning will expire six (6) months after the date it is given to an employee and may not, thereafter, be used in computing the number of written notices an employee has received.

17.4    It is mutually agreed by the Company and the Union that no warning notices need be given prior to discharge.

17.5    Discipline will be conducted on an instructional basis designed to encourage an employee to improve performance and/or become more aware of the need to adhere to and conform with established Company policy.

## ARTICLE 18 - SUCCESSORSHIP

18.1    In the event of any sale, purchase, merger, or other transaction affecting ownership of the Employer's business or ownership of the assets of the Employer's business, the Employer

18

agrees to make known the existence of this Agreement and its terms and conditions to the other party to any such transaction.

## ARTICLE 19 - SEVERABILITY CLAUSE

19.1    If any part of this Agreement is held to be in violation of any federal or state law, the provision held to be invalid shall be of no force and effect, but all of the other provisions of this Agreement shall continue to be binding on the parties hereto.

In the event any provision is held to be invalid, the Employer and the Union agree to meet within thirty (30) days following such holding or determination for the purpose of negotiating a substitute clause to replace the provisions found to be invalid.

## ARTICLE 20 - HEALTH AND WELFARE

20.1    Employees who are now on the Employer's Health and Welfare Plan or employees who wish to participate in the Employer's Health and Welfare Plan shall continue to have that right. After one (1) year of employment, the Employer will pay fifty percent (50%) of the cost, and after two (2) years of employment, the Employer will pay one hundred percent (100%) of the cost. Dependent coverage is optional and will be paid by the employee.

New hires after 7/1/99, after one (1) year, the employer will pay 25%, after the 2nd year, the employer will pay 50%; after the third year, the employer will pay 90%. Dependent coverage is optional and will be paid by the employee.

## ARTICLE 21 - PENSION

21.1    Effective October 1, 2002, the Employer will pay thirty-two cents (.32¢) to the United Food and Commercial Workers Unions and Employers Midwest Pension Fund for all hours worked for employees who have two (2) years of seniority.

Effective March 1, 2008, for February 2008 hours, the Employer agrees to increase the pension contribution five cents (.05¢) to thirty-seven cents (.37¢) per hour.

19

## ARTICLE 22 - COMPLETE AGREEMENT AND DURATION

22.1    This Agreement is the complete Agreement between the parties and, except as expressly provided for herein, relieves the parties of the obligation to bargain on any subject during the term of this Agreement.

22.2    This Agreement shall be effective from the date hereof, except as otherwise specifically provided, and shall continue in full force and effect from July 1, 2005, and shall continue from year to year thereafter unless either party serves a written notice upon the other party ninety (90) days prior to July 1, 2008, of its desire to terminate, modify or amend the provisions of this Labor Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be signed and executed the day and year first above written.

THE GILMAN NURSING PAVILION, LLC

_____
Signature

Marshall A. Mauer
_____
Print Name/Title

UNITED FOOD & COMMERCIAL
WORKERS INTERNATIONAL UNION,
LOCAL 1546

_____
Kenneth R. Boyd, President

Contract #030488

20

# EXHIBIT A - WAGES

A.1     The Following Hourly Rate Wage Increase Applies To All Employees.

Effective first payroll of January 2006 ........................................................... .25¢ per hour
Effective first payroll of July 2006 ................................................................ .25¢ per hour
Effective first payroll of January 2007 ........................................................... .25¢ per hour
Effective first payroll of July 2007 ................................................................ .30¢ per hour
Effective first payroll of January 2008 ........................................................... .35¢ per hour

A.2     Employees Shall Receive The Following Bonus On November 15, 2005:

This Bonus is for employees who had more than six (6) months seniority on or before July 25, 2005.

Six (6) months but less than one (1) year of service ................................................. $50.00
One (1) year but less than three (3) years of service ............................................... $100.00
Three (3) years but less than five (5) years of service ............................................ $200.00
Five (5) years but less than eight (8) years of service............................................. $500.00
Eight (8) years of service or more...................................................................... $800.00

A.3     Employees presently receiving, or who may hereafter receive, in excess of the above wage-rate schedules shall not have their wage rate decreased because of provisions of this Contract.

A.4     All employees shall be eligible to earn an attendance bonus for perfect attendance and reasonable promptness.  This bonus shall be earned and paid on a quarterly basis. Employees who earn this bonus shall receive pay equal to a normal day's pay or the employee may request a day off with pay that is mutually agreed upon.

# UFCW LOCAL 1546

YOUR BUSINESS REPRESENTATIVE IS
<u>ANITA BURMILA</u>

PLEASE FEEL FREE TO CALL WITH ANY
QUESTIONS YOU MAY HAVE.

847/593-3500

# UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST PENSION FUND

## AGREEMENT AND DECLARATION OF TRUST

This Agreement and Declaration of Trust is made as of _____, 19_____, by and between _____, Employer, and Local _____, affiliated with United Food and Commercial Workers International Union, AFL-CIO & CLC.

### WITNESSETH:

WHEREAS, the Employer has entered into a Collective Bargaining Agreement with the Union Local listed above, which Agreement is effective from _____ through _____, and

WHEREAS, said Agreement is part of a series of similar agreements heretofore entered into between certain Employers and Local Unions as defined herein, each of which contemplates the creation of a Trust Fund for the purpose of providing retirement benefits for Employees and the payment of contributions by Employers for the purpose of financing the costs of the retirement benefits (it being understood that Employers having a plan for retirement benefits presently in effect may terminate said plan).

NOW, THEREFORE, in consideration of the premises and mutual promises and covenants herein contained, the parties hereto agree as follows:

### ARTICLE I—Definitions

SECTION 1—The term "Collective Bargaining Agreement" shall mean any written contract between an Employer and a Union which recognizes the Union as exclusive bargaining agent of a bargaining unit of the Employer's Employees affecting such Employees' wages, hours, and other conditions of employment, which written contract shall include provisions for Contributions to the Fund.

SEC. 2—The term "Union" shall include any Local Union which is or may become a party to this Agreement and which is affiliated with United Food and Commercial Workers International Union, AFL-CIO, CLC.

SEC. 3—The term "Employer" shall mean any Employer who:

(1) On or after the Effective Date, has a Collective Bargaining Agreement with a Union requiring periodic Contributions to be made to the Pension Fund;

(2) Signs a copy of the Trust Agreement or in some other manner indicates consent to be bound by the terms of the Trust Agreement which is then filed at the administration office of the Pension Fund;

(3) Is accepted for participation in the Pension Fund by the Trustees in accordance with the provisions of the Plan; and

(4) Makes Contributions to the Pension Fund as required by the Collective Bargaining Agreement.

If an Employer has more than one place of business, the term "Employer" shall only apply to the place or places of business covered by the Collective Bargaining Agreement requiring Contributions to the Pension Fund.

The term "Employer" shall also mean the United Food and Commercial Workers Unions and Employers Midwest Pension Fund, the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, the Union, United Food and Commercial Workers Union State Council and the Illinois Food Retailers Association, provided that they sign a copy of the Trust Agreement as Employer becoming bound by its terms and agree to make Contributions to the Pension Fund, pursuant to a Participation Agreement upon such terms and conditions necessary to preserve the actuarial soundness of the Fund and to preserve an equitable relationship between the Contributions made by the other Employers participating in the Plan and the benefits payable to the Employees of such other Employers and the said Participation Agreement be unanimously acceptable to the Trustees.

SEC. 4—The term "Employee" shall mean any Employee on whose behalf payments are required to be made to the Pension Fund by an Employer pursuant to a Collective Bargaining Agreement with a Union and any Employee employed by the Pension Fund, the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, the Union, the United Food and Commercial Workers Union State Council and the Illinois Food Retailers Association, on whose behalf such Employers are making Contributions to the Pension Fund pursuant to a Participation Agreement but not including any person who is prohibited by law from being covered under the Plan or whose inclusion would adversely affect the tax qualified or exempt status of the Plan or Trust.

SEC. 5—The terms "Trust," "Trust Fund," "Fund," or "Pension Fund" shall mean the Trust Fund established pursuant to Article II hereof.

SEC. 6—The term "Employer Contributions" shall mean payments required of an Employer by the Collective Bargaining Agreement to the Trust Fund herein created and payments made by the United Food and Commercial Workers Unions and Employers Midwest Pension Fund, the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, the Union, the United Food and Commercial Workers Union State Council and the Illinois Food Retailers Association, pursuant to a Participation Agreement.

SEC. 7—The term "Plan" shall mean the Plan formulated in accordance with the provisions of Article VIII.

SEC. 8—The term "Trustees" shall mean those persons who are selected according to the provisions of Article III hereof, together with their successors selected in the manner prescribed by Article III and, who by virtue of their designation as Trustees shall also be "Named Fiduciaries" and "Plan Administrator" as defined under ERISA. The term "Trustee" shall also include an Alternate Trustee when acting in the place and stead of the regular Trustee.

SEC. 9—The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974 as amended from time to time.

SEC. 10—The term "Participation Agreement" shall mean an agreement in form and content acceptable to the Trustees which evidence the commitment of the signatory thereto to be bound by the Trust Agreement and Plan.

SEC. 11—The term "Fund" shall mean the Trust and Plan maintained pursuant to this Trust Agreement and shall constitute the "Plan" for purposes of complying with Section 402 of ERISA and such other references in ERISA to a Plan.

### ARTICLE II—Creation and Name of Trust Fund

SECTION 1—The Union and the Employer hereby create and establish with the Trustees hereinafter designated a Trust to be known as "United Food and Commercial Workers Unions and Employers Midwest Pension Fund," which shall comprise the entire assets derived from Employer Contributions hereafter made to or for the account of this Trust Fund, together with all other assets, investments, and monies received from all other property, funds, assets, and monies received and held by the Trustees for the use, purposes, and trusts as set forth in this Agreement.

### ARTICLE III—Designation of Trustees

SECTION 1—The Fund shall be administered by a Board of Trustees made up of six Trustees, three of whom shall be representatives of the Employer, and three of whom shall be representatives of the Union. All of the assets of the Fund shall be held, managed, and controlled by the Board of Trustees. Each Trustee shall also be a Named Fiduciary within the meaning of ERISA and shall have the authority to control and manage the operation and administration of the Fund and Plan created thereunder. The Board of Trustees shall also constitute the "Plan Administrator" of the Trust and Plan established and maintained under the authority of this Trust Agreement and shall constitute the "Plan Sponsor," both terms being used as defined in Title I, Section 3 of ERISA.

SEC. 2—One Employer Trustee and one Alternate Employer Trustee shall be selected by Employers operating 25 or more stores in the area covered by the Trust, and one Employer Trustee and one Alternate Employer Trustee shall be selected by Employers operating less than 25 stores in the same area; a third Employer Trustee and a third Alternate Employer Trustee shall be selected by mutual consent of the Employer Trustee selected by Employers operating 25 or more stores and the Employer Trustee selected by Employers operating less than 25 stores in the area covered by the Trust. The Employer Trustees and Alternate Employer Trustees so designated or selected shall be mutually acceptable to both Employer groups and shall represent and act for and on behalf of all Employers. The three Employer Trustees shall select a fourth Alternate Employer Trustee from either Employer group. Three Union Trustees and four Alternate Union Trustees shall be selected by the Union. Alternate

EXHIBIT
B
tabbies



Trustees shall have the duties and responsibilities of Trustees when acting in place of Trustees, pursuant to Article IV, Section 3.

Sec. 3—Trustees shall serve without compensation from the Trust Fund, provided, however, that Trustees may be reimbursed by the Trust Fund for reasonable and necessary expenses incurred by them in the performance of their duties as Trustees.

Sec. 4—Each Trustee shall continue to serve during the existence of this Trust until his death, incapacity, resignation or removal.

Sec. 5—A Trustee may resign at any time by giving a thirty (30) day notice in writing to the remaining Trustees. At any time and for any reason, the Local Unions, who are parties to this Trust Agreement and who represent a majority of the Employees, shall have the right to remove and replace either or both of the Union Trustees and any or all of the Alternate Union Trustees. Similarly, either group of Employers as defined in Article III, Section 2, shall have the right to remove their respective designated Employer Trustee and Alternate Employer Trustee. The two Employer Trustees shall have the right to remove the third Alternate Employer Trustee. In such event, the party removing a Trustee shall give the other Trustees five (5) days written notice of such action and shall designate in such notice the successor Trustee.

In no event shall this Trust Fund or the operation of the Board of Trustees be impaired by the death, incapacity, resignation or removal of a Trustee and, in the event of a vacancy on the Board of Trustees, the remaining Trustees shall have full power to act until the designation of a successor Trustee.

Sec. 6—In the event of the death, incapacity, removal or resignation of an Employer Trustee or Alternate Employer Trustee, a successor shall be appointed within thirty (30) days by the party responsible therefor. In the event of the death, incapacity, removal or resignation of a Union Trustee, a successor shall be appointed within thirty (30) days by the Local Unions, who are parties to this Trust Agreement and who represent a majority of the Employees. Written notice of the appointment shall be served upon the other Trustees and parties within said time.

Any successor Trustee shall, immediately upon his designation as a successor Trustee and his acceptance thereof in writing, become vested with all the property, rights, powers and duties of a Trustee.

## ARTICLE IV—*Administration of Trust Fund*

Section 1—The funds shall be administered, controlled and supervised in accordance with this Trust Agreement, solely by the Board of Trustees.

Sec. 2—The Trustees shall meet whenever required for the orderly and timely administration of the business of the Fund at such location as may be acceptable to the Trustees. Any two Trustees may call a special meeting of the Board of Trustees by giving the other Trustees five (5) days' notice in writing of such meeting.

Sec. 3—At any meeting of the Trustees, two Trustees representing the Employer and two Trustees representing the Union shall constitute a quorum. If the Employer Trustee and Alternate Employer Trustee selected by Employers either operating 25 or more stores, or Employers operating less than 25 stores are absent, the Employer Trustee or Alternate Employer Trustees present at such meeting shall act only upon the written authorization of the absent Employer Trustee or Alternate Employer Trustee selected by Employers operating 25 or more stores, or Employers operating less than 25 stores, as the case may be; provided, however, that such Employer Trustee or Alternate Employer Trustees who are present may act if their action is ratified in writing by such absent Employer Trustee or Alternate Employer Trustee. The Union Trustees shall designate the order in which the Alternate Union Trustees shall act in the absence of two or more Union Trustees.

Sec. 4—(a) All decisions of the Board of Trustees pertaining solely to the administrative functions shall be by a majority of the votes cast.

(b) All decisions of the Board of Trustees regarding substantive issues such as those pertaining to Employee eligibility, retirement benefits, and actuarial assumptions, or to matters which affect the actuarial soundness of the Plan shall be by unanimous vote.

(c) Each Trustee shall have one vote, except that an Alternate cannot vote if his regular Trustee is present.

Sec. 5—At the commencement of each fiscal year of the Trust, the Trustees shall select from among them a chairman and a secretary who shall each serve for a period of one year. One officer shall be a Union Trustee and one officer shall be an Employer Trustee. The secretary shall keep an accurate record of the proceedings at all meetings of the Trustees, and of any action taken. The minutes of all meetings and a record of action taken shall be transcribed and retained by the Trustees.

Sec. 6—In the event that a majority of Trustees are unable to agree upon any matter in connection with the administrative functions of this Trust or if the Trustees are unable to reach a unanimous decision on a substantive issue, then the Trustees shall select a neutral person as an impartial arbitrator who is willing to act in the determination of such dispute. Where a majority vote is necessary, in the event that a majority of the Trustees fail to agree upon the selection of an impartial arbitrator, then any one or more of said Trustees may petition the U.S. District Court, Northern District of Illinois, Eastern Division for the appointment of an impartial umpire to decide such dispute.

Where a unanimous vote is necessary, in the event that the Trustees cannot unanimously agree upon the selection of an impartial arbitrator, then any one or more of said Trustees may petition the U.S. District Court, Northern District of Illinois, Eastern Division for the appointment of an impartial umpire to decide such dispute. The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the impartial arbitrator or umpire, in writing, its version of the issue in dispute. The impartial arbitrator or umpire shall have the authority to render a discretionary decision in the same manner and to the same extent as the Trustees, as well as to interpret the Trust Agreement and Plan. As part of his decision, the impartial arbitrator or umpire shall state his determination as to the exact issue.

The decision of the arbitrator or umpire shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolutions of deadlock issues. Any costs and attorneys' fees in connection with the foregoing shall be paid out of the Trust Fund, including any reasonable compensation to the impartial arbitrator or umpire.

Differences arising as to the interpretation or application of the provisions of this Trust Agreement, or relating to Employee benefits provided for hereunder, shall not be subject to the grievance or arbitration procedures established in the Collective Bargaining Agreement.

Sec. 7—No Union or Union State Council shall have any voice in the selection, election or designation or in the method of selection, election or designation of any Employer Trustee, notwithstanding that such Union or Union State Council may be making Employer Contributions to the Trust.

Sec. 8—In addition to the duties, authority and responsibilities imposed upon or given to the Trustees elsewhere in this Trust Agreement, said Trustees shall have the authority by motion or resolution, duly adopted at a meeting thereof in accordance with this Trust Agreement to:

(a) Allocate to one or more of said Trustees specific Trustee responsibilities, obligations or duties, as well as designated fiduciary responsibilities other than Trustee responsibilities. Such allocation of specific Trustee responsibilities may be made pursuant to the formulation of Trustee committees. Trustee committees shall consist of one (1) Employer Trustee and one (1) Union Trustee.

(b) Designate one or more persons other than Trustees to carry out any part of their fiduciary responsibilities, but may not delegate to any person who is not a Trustee any of their Trustee responsibilities.

Sec. 9—All decisions of a committee of the Board of Trustees, duly designated pursuant to Article IV, Section 8, shall be by unanimous vote. In the event of a deadlock, the matter voted upon by the committee shall be referred to the full Board of Trustees for decision.

## ARTICLE V—*Contributions and Defaults of Employer*

Section 1—Each Employer shall make continuing and proper reports and Contributions to the Trust Fund in accordance with this Agreement and Declaration of Trust and the Collective Bargaining Agreement.

A participating Employer shall be considered to be delinquent in the payment of Contributions if he (a) fails to submit a proper and detailed contribution reporting form, and the Contributions detailed therein, by the close of business on the due date, or (b) fails to submit Contributions on behalf of all Employees for whom Contributions are required by the Collective Bargaining Agreement or special agreement, or (c) fails to compute properly the Contributions according to the required Contribution formula specified in the Collective Bargaining Agreement or special agreement.

Sec. 2—(a) The Trustees shall establish a uniform system among the Employers for the timely transmission of reports and Contributions and establish a periodic date on which such reports and Contributions shall be due.

(b) The Trustees shall notify any Employer of an apparent delinquency, mistake, or discrepancy in a report or Contribution.

(c) An Employer shall remain liable for the full amount of Contributions due during the period in default. The Trustees shall have the power to take any action necessary for the recovery of such Contributions and the enforcement of the Employer's obligations

—2—

hereunder. However, nothing contained herein shall be deemed to modify or limit, in any way, rights the Union may have under the terms of a Collective Bargaining Agreement to enforce collection of any amounts due the Trust.

(d) The parties recognize and acknowledge that the regular and prompt payment of Employer Contributions to the Trust is essential to the continued efficient administration of the Trust, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Trust which would result from the failure of an individual Employer to pay such monthly Contributions in full within the period established by the Trustees.

Therefore, the amount of damage to the Trust from such failure shall be presumed to be, for each month of delinquency, 10% of the amount of the Contribution or Contributions due for the first month of the delinquency and, in addition thereto, 1½% per month for each additional month said delinquency remains uncured. Liquidated damages for subsequent delinquent monthly Contributions, if any, shall be separately calculated for each separate month on the same basis as the first month and the total liquidated damages for all delinquent Contributions shall be cumulative and arrived at by adding the total of the liquidated damages calculated separately for each month of delinquent Contributions.

If the Trustees bring suit against any Employer to collect any delinquent Contribution or Contributions, the Employer also shall be liable for costs of filing said suit and reasonable attorneys' fees.

(e) The Employer, by appropriate action of the Trustees in the event of any previous defaults in his obligations to make timely reports and Contributions, may be required to keep on deposit with the Trustees an amount estimated to be equal to three (3) months' Contributions. The Trustees, by appropriate action, may require a new Employer, who hereafter becomes a party to this Agreement and Declaration of Trust, to keep on deposit with the Trustees an amount estimated to be equal to three (3) months' Contributions for the number of Employees which the new Employer expects to employ, but such deposit shall, in no event, be less than two hundred dollars ($200.00).

(f) In the event the Collective Bargaining Agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent Employer to greater amounts of liquidated damages, interest, or attorneys' fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.

The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the Collective Bargaining Agreement.

Sec. 3—The Trustees shall have the authority, at the expense of the Trust Fund, to audit the payroll books and records of a participating Employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on an individual basis.

Whenever a payroll audit is authorized, the participating Employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the Employer may be required to maintain under Section 209(a)(1) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the Employer's federal, state and local payroll tax reports, and all other documents and reports that reflect the hours and wages, or other compensation of the Employees, or from which such can be verified.

In the event the payroll audit discloses that the participating Employer has not paid Contributions as required by the Collective Bargaining Agreement or special agreement, the Employer shall be liable for the costs of the audit. The Trustees shall have the authority, however, to waive all or part of such costs for good cause shown.

## ARTICLE VI—*Powers and Duties of Trustees*

Section 1—The Trustees shall have general supervision of the operation of the Trust and shall conduct the business and activities of the Trust according to this Trust Agreement.

Sec. 2—The Trustees shall hold, manage, care for and protect the Trust Fund and collect the income therefrom and Contributions thereto.

Sec. 3—The Trustees shall have the power, in their sole discretion, to invest and re-invest the principal and income of the Trust Fund in such securities, common and preferred stock, mortgages, notes, real estate, or other property as shall be permissible investments for Trustees in the State of Illinois and under ERISA, and may sell or otherwise dispose of such securities or property at any time and from time to time as they so see fit; provided, however, the Trustees may, in their sole discretion, invest the Trust Fund or any

part thereof in retirement annuity contracts, annuity contracts, retirement income contracts, group contracts, provided all such contracts are issued by legal reserve life insurance companies authorized to do business in the State of Illinois, as may be selected by the Trustees, for the purpose of providing for all or part of the benefits provided under this Trust. The Trustees shall have power (in addition to and not in limitation of common law and statutory authority) to exercise in respect to any stocks, bonds or other property, real or personal, held by them as Trustees, all such rights, powers and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right.

Sec. 4—The Trustees may appoint one or more Investment Managers to supervise and direct the investment and re-investment of a portion or all of the Trust in accordance with the provisions of the Trust Agreement in the same manner and with the same powers, duties, obligations, responsibilities and limitations as apply to the Trustees as set forth herein. The term "Investment Manager" is defined pursuant to Title I, Section 3(38) of ERISA, and any such Investment Manager appointed by the Trustees shall be qualified to act as such under the aforesaid provisions of ERISA and as a condition to its appointment shall acknowledge in writing that it is a Fiduciary with respect to the Fund. The Trustees shall not be liable for the acts or omission of such Investment Manager or under any obligation to invest or otherwise manage any assets of the Fund which are subject to the management of such Investment Manager.

If a bank is appointed as the Investment Manager, a fiduciary agreement shall be executed between the bank and the Trustees setting forth the duties and powers of the bank. If an insurance company is selected as the Investment Manager, the Trustees shall execute appropriate contracts with the insurance company. The Investment Manager shall hold, invest and disburse all assets of the Pension Fund in accordance with the fiduciary agreement or the insurance contract and in compliance with the provisions of ERISA.

(a) The Trustees are authorized to deposit any part or all of the funds held under this Trust Agreement to be invested in any common, comingled or collective fund maintained under a trust that has been determined to meet the requirements of Section 401a, and is entitled to exemption from taxation under Section 501a of the Internal Revenue Code of 1954 (or a comparable section or sections of future legislation that amends, supplements or supersedes those sections of the code). The declaration of trust or the agreement under such common, co-mingled or collective fund is maintained, as amended, modified or supplemented, shall be deemed part of this Agreement.

Sec. 5—All Trust funds not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select, and any such deposit or deposits shall be made in the name of the Trust. All such funds shall be disbursed only by check or draft, signed by at least one Trustee representing the Employers and one Trustee representing the Employees. No Trustee shall be liable in any manner for the failure of any depository selected by the Trustees in good faith, and in the exercise of reasonable business judgement.

Sec. 6—The Trustees shall keep true and accurate books of account and a record of all its transactions, meetings, and the actions taken at such meetings or by informal action of the Trustees.

Sec. 7—The Trustees shall procure an audit of the books of the Trust by a Certified Public Accountant not less frequently than once each year, and a copy of each such audit shall be furnished to each Trustee, and a copy of each such audit shall be kept available for inspection by authorized persons during business hours at the office of the Trust.

Sec. 8—A Trustee shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by him to be genuine and to contain a true statement of facts and to be signed or sent by the proper person.

Sec. 9—(a) Insofar as permitted by ERISA, no Trustee shall be liable for any act or action pursuant to this Trust in good faith taken, performed or omitted, nor for any act or action taken, performed or omitted by any person or firm with whom the Trustees contract for benefits hereunder (except that this shall not relieve the Trustees from their obligation to enforce any duties or obligations of such person or firm at the expense of the Trust), nor for any act or action taken, performed or omitted by an agent, employee, co-Trustee, actuary, certified public accountant, attorney or other professional consultant, without reasonable care, for any act or action taken, performed or omitted by any other Trustee, nor for any act or failure to act, except only for his own gross negligence or willful misconduct.

(b) Insofar as permitted by ERISA, in the exercise of their discretionary powers, the Trustees may act solely upon their own best judgement upon the facts brought to their attention without liability for errors of judgement and with complete immunity from liability for losses, damages or liability sustained by the Trust, the Employers, or by any Employee or his beneficiary, so long as the Trustees act in good faith.

SEC. 10—The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which it deems necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of this Agreement, and the Collective Bargaining Agreement creating the Fund. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust and all persons claiming any benefits hereunder.

SEC. 11—Any successor Trustee appointed in accordance with the provisions of this Agreement, upon accepting in writing the terms of this Trust, shall be vested with all of the rights, powers and duties of his predecessor.

SEC. 12—No party dealing with the Trustees shall be obligated (a) to see to the application to the Trust purposes, herein stated, of any money or property belonging to the Trust Fund, or (b) to see that the terms of this Agreement have been complied with, or (c) to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon (a) that at the time of the delivery of said instrument the Trust was in full force and effect, (b) that the instrument was executed in accordance with the terms and conditions of this Agreement, and (c) that the Trustees were duly authorized and empowered to execute the instrument.

SEC. 13—The receipt given by the Trustees for any money or other properties received by them shall effectually discharge the person or persons paying or transferring the same, and such person or persons shall not thereafter be responsible for the use to which same is put or for the loss or misapplication thereof.

SEC. 14—The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund, and to do all acts as it, in its discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the employee involved.

(b) To keep property and securities registered in the name of the Trustees or in the name of a nominee or nominees or in unregistered or bearer form without disclosure of any fiduciary relationship.

(c) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of such Trust.

(d) To pay out of the funds of the Trust all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property or securities forming a part thereof.

(e) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

(f) To enter into reciprocal agreements with other Trust Funds on such terms as the Trustees may deem necessary or advisable provided the same are not inconsistent with the terms of this Agreement and Declaration of Trust.

SEC. 15—The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay or provide for

(1) The payment of all reasonable and necessary expenses of collecting the Contributions and administering the affairs of this Trust, including the employment of such legal counsel, investment managers, medical consultants, field auditors, ERISA-qualified public accountants, enrolled actuaries, administrative, accounting and other assistants or employees as the Trustees, in their discretion, may find necessary or appropriate in carrying out the purposes of this Trust;

(2) The leasing of such premises as may be necessary for the operation of the affairs of the Trust; and

(3) The purchase or leasing of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate to the performance of its duties.

(b) To pay or provide for the payment of benefits to eligible Employees in accordance with the terms, provisions and conditions of the Plan to be formulated and agreed upon hereunder by the Trustees.

SEC. 16—The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and conditions of the Plan adopted by it; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employers, Employees, and all other persons.

SEC. 17—The Trustees, by resolution, shall provide for fidelity bonds, in such form and amounts as may be required by statute, for their Employees and for the Trustees who shall be authorized to withdraw moneys from the Trust Fund. If no such statutory requirement shall exist, such bonds shall be in such form and amounts as the Trustees may determine.

SEC. 18—The costs and expenses, including legal fees for any action, suit, or proceeding relating to the Trust which is brought against the Trustees, shall be paid as a general expense of the administration, provided, however, that such costs or expenses shall not be paid from the Trust Fund if it is adjudged in the action, suit or proceeding that the Trustees were guilty of gross negligence or willful misconduct.

SEC. 19—The Trustees shall have the power to purchase such insurance as they deem advisable for the protection of the assets of this Trust and of its Plans, as well as insurance of the type described in Section 410(b) of ERISA, and to pay the premiums therefor out of the assets of this Trust. In addition, they are authorized to obtain the bonding required by Section 412 of ERISA, and to pay the premiums therefor out of the assets of this Trust.

SEC. 20—The Trustees may sponsor participation of themselves, their alternates, employees and advisors, in educational conferences, seminars, or programs, and may in that regard incur, advance or reimburse reasonable expenses for registration, travel, hotel, food and other expenses.

SEC. 21—It is recognized that at some time or times in the future the Trustees may deem it in the best interest of this Trust Fund and of the participating Employers, Unions and Employees, to merge this Trust Fund into another employee benefit trust fund, or to accept the merger of another employee benefit trust fund into this Trust Fund. The Trustees shall have the authority to investigate, evaluate and negotiate any such merger and to enter into appropriate agreements to consummate the same.

If this Trust Fund should be merged into another employee benefit trust fund, the Trustees shall have the authority to terminate this Trust Fund and to transfer the remaining assets or liabilities to the other fund. If another employee benefit trust fund is merged into this Trust Fund, the Trustees shall have the authority to accept a transfer of assets or liabilities from the other trust.

## ARTICLE VII—Controversies and Disputes

SECTION 1—In any controversy, claim, demand, suit at law, or other proceeding between any Employee, beneficiary, or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Board, any instruments on file with the Board, with the Union, or with the Employers, any facts certified to the Trustees by the Union, or the Employers, any facts which are of public record, or any other evidence pertinent to the issue involved.

SEC. 2—All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits preferred by any Employee, or any other persons, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund, or otherwise, shall be submitted to the Trustees for decision, and the decision of a majority of the Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit hereunder.

SEC. 3—The Trustees may, in their sole discretion, compromise or settle any claim or controversy in such manner as they think best, and any majority decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees shall be conclusive and binding on all parties interested in this Trust.

## ARTICLE VIII—Establishment of Plan

SECTION 1—FORMULATION OF PLAN—The Trustees shall formulate a Plan for the payment of such retirement benefits as may be feasible and shall begin active operation of such Plan as soon as possible. Such Plan shall at all times conform to the applicable sections of the then applicable Internal Revenue Code for purposes of tax deduction and the Collective Bargaining Agreement between the parties. Said Trustees shall draft procedures, regulations and conditions for the operation of the Plan, including by way of illustration and not limitation: conditions of eligibility for covered Employees, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits; provided, however, that all such rules and regulations adopted by the Trustees shall be general in their application and no special or particular treatment shall be accorded to any Employee.

SEC. 2—ASSISTANCE FOR DRAFTING PLAN—The Board may consult with or employ such actuarial and other experts as they deem necessary for the proper formulation and operation of said Plan.

SEC. 3—COPIES OF PLAN AND NOTICES—A copy of such Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Board and copies of such Plan shall be distributed to the Union and to the Employers.

### ARTICLE IX—*Amendments*

SECTION 1—This Agreement and Declaration of Trust may be amended in writing at any time as follows: A majority of the Trustees shall first concur in the amendment and thereafter submit same in writing to all of the parties hereto. Within thirty days after date of mailing of said amendment, any party hereto may present in writing to the Trustees his objection thereto. If a majority of the parties hereto, or the Employers of a majority of the Employees covered by this Trust Agreement present such objection, then the amendment shall not become effective.

If, however, within the aforesaid time period, a majority of the parties hereto or the Employers of a majority of Employees covered by this Trust Agreement do not present such objection, then the amendment shall become effective as of the effective date set forth in the amendment. In no event shall this Agreement be amended so as to change the purposes herein stated or permit the diversion or application of any of the Trust Fund for any other purpose.

### ARTICLE X—*Spendthrift Clause*

SECTION 1—All benefit payments to Employees, if and when payments shall become due, shall, except as to persons under legal disability, be paid to such Employees in person and shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution, or levy of any kind, either voluntary or involuntary including any such liability which is for alimony or other payments for the support of a spouse or former spouse, or for the support of any other relative of an Employee, prior to actually being received by the person entitled to the benefit, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder, shall be void. The Pension Fund shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder. Notwithstanding the foregoing, deductions may be made from monthly Pension payments upon the pensioner's filing of a written request and authorization therefor with the Trustees on a form prescribed by the Trustees, provided that such authorized deductions constitute (a) amounts withheld for federal tax purposes, (b) with the concurrence of the Trustees of the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, health benefit contributions to said Fund, or (c) payments which, in the opinion of the Trustees of this Fund, would serve as an administrative convenience to the pensioner and are deemed by the Trustees as not inconsistent with the purposes of the preceding clauses (a) and (b), insofar as the provisions of ERISA permit.

### ARTICLE XI—*Incompetency*

SECTION 1—If, in the opinion of the Trustees, any retired Employee is unable to care for his affairs because of mental or physical incapacity, the Trustees may pay the benefits due such pensioner to his legal guardian, or legal representative; or, in the absence of any of them, to any relative by blood or by marriage who is deemed by the Trustees to be equitably entitled thereto. Payment by the Trustees to such legal representative or relative of the pensioner shall operate to discharge the Trustees from any liability to such pensioner or to anyone representing him or his interest.

### ARTICLE XII—*Termination*

SECTION 1—The Trustees may terminate the Trust and the Plan at any time and, in the event of such termination, the assets of the Pension Fund shall be liquidated, after provision is made for the expenses of liquidation, by the payment (or provision for the payment) of benefits accrued prior to the date of termination in the manner and order of preference set forth in the Plan adopted by the Trustees.

SEC. 2—In the event the Trust hereby created is subject to the Rule against Perpetuities as existing in the law of the State of Illinois at the time in this sentence fixed for termination of the Trust, the Trust shall terminate twenty (20) years after the date of the death of the last Employee covered by this Agreement at the time of the execution of this Agreement; otherwise, this Trust shall have perpetual existence except as provided in the next preceding paragraph hereof.

### ARTICLE XIII—*Extension of Plan*

SECTION 1—The Trustees are authorized to extend the coverage of the Agreement and Trust to such other Employers and Employees as the Trustees shall agree upon, provided such Employers and Employees are required to conform to the terms and conditions of the Trust.

The Trustees shall approve a business organization's participation herein only if such participation will not adversely affect the actuarial soundness of the Pension Fund, as determined by the Trustees after consultation with the actuaries of the Pension Fund. To enable the Trustees to make such determination, each Union seeking approval of a new Employer shall be required to furnish the name, date of birth and employment history of such Employee then covered by the Collective Bargaining Agreement between the Union and the new Employer.

Any business organizations accepted as an Employer after the Effective Date may be required to sign, along with the Union, a Participation Agreement approved by the Trustees which sets forth the full details of the basis for Contributions to the Pension Fund and the basis for acceptance as an Employer.

When an Employer is accepted for participation, the Trustees may, in writing, impose on such acceptance any terms and conditions they consider necessary to preserve the actuarial soundness of the Pension Fund and to preserve an equitable relationship between the Contributions made by the other Employers then participating in the Plan and the benefits payable to the Employees of such other Employers. Such conditions may include, but shall not be limited to, the imposition of special waiting periods before the commencement of benefits and/or the granting of a lower scale of benefits.

### ARTICLE XIV—*Vesting of Rights*

SECTION 1—No Employee shall have any right to, or interest in, any of the assets of the Pension Fund upon termination of his employment or otherwise, except as provided from time to time under the Plan, and then only to the extent of the benefits payable to such Employee out of the Pension Fund. All payments of benefits as provided for in the Plan shall be made solely out of the assets of the Pension Fund and the Employers shall not be liable therefor in any manner. No Contributions to be made hereunder shall be deemed wages due any Employee.

### ARTICLE XV—*Miscellaneous*

SECTION 1—In no event shall the Employers, directly or indirectly, receive any refund of Contributions made by them to the Trust, except in case of bona fide mistake, nor shall such Employers directly or indirectly participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund. Upon payment to the Trustees, all responsibilities of the Employers for each Contribution shall cease and the Employers shall have no responsibilities for the acts of the Trustees. No Employees shall have any individual right, title, interest or claim against any Employer, Employer's Contribution, or the Trust Fund, except as may be expressly provided for in this Agreement.

SEC. 2—In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees, in their sole discretion, shall have been made, or the Trustees shall have been adequately indemnified against loss to their satisfaction.

SEC. 3—Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

SEC. 4—The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Agreement or be construed as part hereof.

SEC. 5—This Trust is accepted by the Trustees in the State of Illinois and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of such State.

SEC. 6—This Trust shall continue during the term of such Collective Bargaining Agreements as referred to in Article I, Section 1, and during the term of any renewal or extension of such Collective Bargaining Agreements, or any succeeding Collective Bargaining Agreements, which provide for the continuation of such Trust.

SEC. 7—Where used in this Agreement, the phrase "parties hereto" shall be read and construed to include all parties (Employers and Unions) entering into like Agreements and the phrase "this Trust Agreement" shall be read and construed to include like Agreements and Declarations of Trust entered into by other Employers and Unions as defined herein.

SEC. 8—Upon the termination of the Trust, the Trustees shall continue in such capacity for the purpose of dissolution with full powers as herein provided and may execute any and all instruments which may be required.

SEC. 9—Should any provision of this Agreement and Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of the Plan. No Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provision shall be held unlawful by a court of competent jurisdiction.

## ARTICLE XVI—*Unclaimed Benefits*

SECTION 1—If a Participant or his beneficiary who is entitled to receive benefits under the Plan fails to accept such benefits and/or fails to demonstrate an interest in such benefits, in person or in writing, then any and all benefits for such Participant or beneficiary will be held under the Plan to prevent escheat unless prohibited by law.

For the purposes of this Article, it will be sufficient proof of a person's failure to demonstrate interest in his benefit if it can be shown that notices sent by registered or certified mail to the last known address of the person, his designated beneficiary, or his executor or administrator could not be delivered.

## ARTICLE XVII—*Effective Date*

Notwithstanding anything herein contained, the provisions of the Agreement and Declaration of Trust shall be effective _____
_____, 19 _____.

IN WITNESS WHEREOF, the Union and the Employers by their duly-designated representatives, and the Trustees, in order to evidence their acceptance of the Trust hereby imposed, have caused this Agreement and Declaration of Trust to be executed this _____ day of _____, 19 _____.

As amended through Amendment XII.

**EMPLOYER:**

_____

_____

_____

**UNION:**

_____

_____

_____

### APPROVED AND ACCEPTED

#### REGULAR TRUSTEES

Employer:

_____

_____

_____

Union:

_____

_____

_____

#### ALTERNATE TRUSTEES

Employer:

_____

_____

_____

_____

Union:

_____

_____

_____

_____

458

251-1091001